**Beulah BULLARD, Appellant,**

v.

**Aileen CURRY–CLOONAN, Appellee.**

**No. 9917.**

District of Columbia Court of Appeals.

Argued Feb. 3, 1976.

Decided Dec. 13, 1976.

---

Albert E. Brault, Washington, D. C., for appellee.

Before FICKLING and YEAGLEY, Associate Judges, and HOOD, Chief Judge, Retired.

FICKLING, Associate Judge:

Appellant and appellee, as co-executrixes and principal residuary legatees under the will of James E. Curry, entered into a compromise agreement in settlement of their respective rights to inherit from decedent's estate. Appellant subsequently brought this action seeking to have that agreement declared null and void. Both parties filed motions for summary judgment below, pursuant to Super.Ct.Civ.R. 56. The trial court dismissed appellant's motion and granted the motion of appellee, thereby upholding the agreement. This appeal followed.

Appellant contends on appeal that she, rather than appellee, was entitled to summary judgment as a matter of law. Appellant avers that the settlement agreement in question was not supported by adequate consideration, and that appellee breached the fiduciary duties she owed, as co-executrix, to the appellant, as a residuary legatee. We disagree with both of these contentions, and therefore we affirm.

The facts in this case are undisputed.[1] James E. Curry, an attorney, died domiciled in the District of Columbia on August 23, 1972. In a valid will dated August 4, 1972, he named appellant (a friend) and appellee (his daughter) as co-executrixes of his estate and as principal residuary legatees.

Along with other assets, decedent at the time of his death owned, jointly with various relatives, $140,000 worth of United States Series E Savings Bonds. His will stated that, notwithstanding the joint ownership of these bonds, it was decedent's intent that "such . . . bonds shall be a

Fredrick D. Palmer, Washington, D. C., with whom Jay R. Weill, Washington, D. C., was on the brief, for appellant.

1. Both parties have specifically accepted the affidavit of Landon Dowdey, attorney for the estate, as being factually correct for purposes of this appeal.

part of my estate to be disposed of according to the terms of this will." At the time of his death, decedent was also entitled to a share in any legal fees which, although speculative at that time, might accrue later as payment for decedent's role in litigation involving claims by certain Indian Nations against the United States Government. The amounts that appellant and appellee would take under the residuary clause were directly affected by whether the bonds and the attorney's fees became assets of the estate.

Landon Dowdey, a personal friend and associate of the decedent who served as attorney for the estate, advised appellant and appellee that in his legal opinion the savings bonds passed to the respective co-owners at the time of decedent's death, and that any attempt to bring these bonds into the estate would, no doubt, be fruitless. Sometime after receiving this advice, appellee personally contacted the named co-owners of the bonds (who were also her relatives) and found that the co-owners were willing to convey the bonds to the estate if appellee requested and approved such conveyances. Appellee had been exploring the possibility of filing a caveat to the will, and initially was unwilling to request her relatives to sign over the bonds.

Mr. Dowdey, working with the co-executrixes, arrived at a settlement agreement that was accepted orally by both parties on April 26, 1973. This agreement was then reduced to writing, but on April 30, 1973, appellant refused to sign, stating that she wanted more time to consider the agreement. On that day, appellee's right to contest the will expired.[2] Several weeks later, appellant submitted a proposed modification of the agreement, and on May 30, 1973, both parties signed the agreement as modified.

In essence, the settlement contract provided that appellee would surrender her statutory right to contest the will, and would arrange for the transfer to the estate by her relatives of all jointly owned United States Series E bonds and various jointly owned bank accounts. If she failed to acquire any of the bonds for the estate, appellee agreed that the value of those bonds would be debited against her expected legacy under the will. In return, appellant agreed to assign to appellee all of appellant's rights to share in any proceeds from the pending Indian claims cases. It was also understood that appellee would donate 10% of any such award to a charitable organization for the benefit of American Indians.

Under the agreement, bonds were conveyed and distribution of the estate proceeded according to the terms of the settlement agreement. Sometime thereafter, it became apparent to appellant that a share in the Indian claims attorney's fees would, in all likelihood, be forthcoming, and that the fees would be for substantial amounts. Appellant then filed her complaint praying for rescission of the settlement contract so that she could share in any subsequent award.

■ The granting of summary judgment is appropriate only when the pleadings and affidavits before the court show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Yates v. District Credit Clothing, Inc.*, D.C.App., 241 A.2d 596, 598 (1968); Super.Ct.Civ.R. 56(c).[3] The dispositive facts in the instant case not being

2. D.C.Code 1973, § 18–509, provides:
    After a will has been admitted to probate, a person in interest may, within six months from the date of the order of probate, file a verified caveat to the will, praying that the probate thereof be revoked.
  The will was admitted to probate on November 1, 1972.

3. Super.Ct.Civ.R. 56(c) provides in part that:
    The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

in dispute, our question becomes whether appellee was entitled as a matter of law to the grant of summary judgment which she received below.

Appellant first contends that the settlement agreement in question was void in that it was not supported by adequate consideration. Appellant avers that at the time the agreement was entered into, appellee's right to contest the will had already expired. Appellant also contends that appellee's promise to acquire the Series E bonds for the estate was not valid consideration in support of the agreement, since appellee was under a preexisting duty as a co-executrix to bring all of decedent's assets into the estate. We disagree with both of these contentions.

■ It is true that the validity of a settlement agreement is to be judged under general contract principles. We have held that for such an agreement to be valid, "there must be an offer and an acceptance, and consideration to support the agreement." *Rommel v. West American Insurance Co.*, D.C.Mun.App., 158 A.2d 683, 685 (1960). It is equally true, however, that the law favors the settlement of litigated matters and the compromise of disputed claims. *Id.* at 684; *Magruder v. National Metropolitan Bank*, D.C.Mun.App., 40 A.2d 828, 830 (1945). We have noted in that regard that:

> Ordinarily a settlement is motivated by a mutual desire to avoid the expense and risks of litigation. Unless a claim is unreasonable or the compromise imprudently consummated, the public policy of encouraging settlements should be recognized. . . . [*Early Settlers Insurance Co. v. Schweid*, D.C.App., 221 A.2d 920, 922 (1966).]

*See also Autera v. Robinson*, 136 U.S.App. D.C. 216, 218, 419 F.2d 1197, 1199 (1969). The record before us shows that appellant and appellee entered into their settlement agreement for the very reasons enunciated in *Magruder*: to avoid the expense and risk to both parties that are the by-products of litigating disputes.

■ We have often held that, as a general principle, the forbearance of a cause of action advanced in good faith, which is neither absurd in fact nor obviously unfounded in law, constitutes good and valuable consideration. *Rommel v. West American Insurance Co., supra* at 684; *Saunders System Washington Co. v. Kuffner*, D.C. Mun.App., 75 A.2d 136, 137 (1950); *Magruder v. National Metropolitan Bank, supra* at 830.

■ Appellant's contention—that appellee's forbearance of her right to file a caveat did not constitute consideration—fails in light of the record before us. The affidavit of Mr. Dowdey, which both parties have accepted as bring factually correct, shows that appellant and appellee agreed to the settlement contract orally on April 26, 1973, four days before appellee's right to file a caveat expired. Moreover, it appears that the only reason the written agreement was not finalized prior to the expiration of that right was appellant's refusal to sign the agreement until June 1, 1973. In light of this fact, appellant cannot be heard now to complain that there was a lack of consideration to support the settlement contract.

Furthermore, appellee undertook an additional obligation under the agreement by promising to either secure the conveyance of all of the Series E bonds into the estate, or to have her share of the estate debited by the amount of any bonds not so conveyed.

■ Appellant's second contention—that appellee breached her fiduciary duties by refusing to secure the transfer of the bonds until the settlement agreement was entered into—is equally without merit.

It is true that an executrix is, as a general rule,

held to the utmost [standard of] frankness and fair-dealing in [her] relations with the beneficiaries of the estate. By this standard [she is] placed in a fiduciary relationship as to the beneficiaries . . . .. [*In re Wright,* 131 Vt. 473, 310 A.2d 1, 10 (1973); citation omitted.]

*See also Sullivan v. Doyle,* 193 Md. 421, 430, 67 A.2d 246, 250 (1949). Since both appellant and appellee were co-executrixes as well as residuary legatees under the will, a fiduciary duty was imposed on each of them in their dealings vis-a-vis each other. However, the mere fact that this fiduciary duty exists does not, standing alone, preclude the parties from entering into an agreement compromising their respective rights as legatees. *McGee v. Marbury,* D.C.Mun.App., 83 A.2d 157, 158 (1951); *see In re Fiedler's Estate,* 55 N.J. Super. 500, 511, 151 A.2d 201, 207 (1959).

Our question, then, becomes whether the settlement agreement in the instant case was entered into by appellee in dereliction of the fiduciary duties she owed to the appellant. An examination of the record and the relevant case law shows that it was not.

■ An executor is charged with the duty of bringing all of the decedent's assets into the estate.

It has been repeatedly held that "assets", as applied to decedent's estate, means property, real or personal, tangible or intangible, legal or equitable, which can be made available [to the estate]. [*Stoner v. National Metropolitan Bank,* 77 F. Supp. 699, 700–01 (D.D.C.1948).]

Moreover, when necessary, the executor of an estate is charged with the duty of bringing legal or equitable actions to accomplish this goal. *See Krajewski v. Blair,* 297 A.2d 70 (Del.Ch.1972); *Sullivan v. Doyle, supra.* However, the executor is not compelled to initiate suits to recover property that have little or no possibility of success, since the expense of such litigation would, in all probability, decrease rather than augment the estate. *See Kahmann v. Buck,* 446 S.W.2d 457, 462 (Mo.App., Kan. City Ct.App.1969); *In re Drexel's Will,* 35 Misc.2d 964, 231 N.Y.S.2d 574 (Sur.Ct. 1962); *In re Estate of McClatchy,* 433 Pa. 232, 238, 249 A.2d 320, 322 (1969).

■ In the instant case, the government bonds were not, and could not be made, assets of the estate since under federal law they passed at the time of decedent's death to the named co-owners, notwithstanding the provisions of the will. *See Reynolds v. Reynolds,* 325 Mass. 275, 90 N.E.2d 338 (1950); *In re Haas' Estate,* 10 N.J.Super. 581, 77 A.2d 523 (1950). We have held that federal retirement funds are governed by federal regulations as to how title in those funds will vest, and that therefore such funds are beyond the testamentary powers of a deceased and the value of such funds is not an asset of decedent's estate. In so ruling, we noted that:

A somewhat similar question arose in numerous cases involving United States Savings bonds which permit the designation of one to whom they shall be payable on death of the owner. By the great weight of authority such designation validly passes title on death of the owner and does not violate the local law of wills or distribution of decedents' estates. [*Ashton v. Ashton,* D.C.Mun. App., 117 A.2d 459, 462 (1955).]

Since the bonds in the instant case were not assets of the estate, neither co-executrix was charged with a duty to bring them into the estate. Similarly, there was no obligation to sue the holders of the bonds to obtain them as assets, since such actions would not have realistic chances of success. It is clear, therefore, that the agreement between appellant and appellee in settlement of their respective rights as legatees did not violate the fiduciary obligations that they owed to each other.

■ Instead of revealing a breach of fiduciary duties, the record before us actually reveals a compromise and settlement, supported by consideration, and arrived at through negotiations at arm's length with full disclosure. In such a situation:

> [The] compromise and settlement operates as a merger of and bars the right to recovery on any claim included therein. The compromise agreement is substituted for the pre-existing claims or rights, and the liabilities of the parties are measured and limited by the terms of the compromise agreement. . . . [*McGee v. Marbury, supra* at 159.]

*See also In re Di Paola's Estate*, 350 Pa. 408, 410, 39 A.2d 519, 520 (1944).

Since there are no disputes as to material facts in the instant case, and since the appellee was entitled to judgment as a matter of law, the court below properly granted appellee's motion for summary judgment.

*Affirmed.*